UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RALPH RODRIGUEZ,

        Plaintiff,

        v.

MATTHEW THOMS et al.,

        Defendants.

20-CV-751-LJV-LGF
DECISION & ORDER

---

Before the Court is a motion for partial summary judgment filed by the

defendants—New York State; Matthew Thoms, the Superintendent of Five Points

Correctional Facility ("Five Points"); Kelly Truax, an employee of the Department of

Corrections and Community Supervision ("DOCCS") who works at Five Points; and

several other DOCCS employees. Docket Item 56. More specifically, the defendants

argue that the plaintiff, Ralph Rodriguez, "failed to exhaust administrative remedies

regarding . . . all claims alleged to have occurred from[] in or about[] April 2017 through[]

in or about[] July 2017 against [the individual d]efendants" in the first and second

causes of action, as well as with respect to "the retaliation claim alleged in [the fifth

cause of action] against Defendant Truax." Docket Item 56-1 at 2.[1] After Rodriguez

responded to the motion, Docket Item 60, the defendants replied, Docket Item 62.

For the reasons that follow, this Court finds that the defendants have not

established as a matter of law that Rodriguez failed to exhaust his administrative

---

[1] Page numbers in docket citations refer to ECF pagination.

remedies.  The Court therefore denies the defendants' motion for partial summary judgment.

## LEGAL PRINCIPLES

### I.    SUMMARY JUDGMENT

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant."  *Id*. (italics omitted) (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc*., 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id*.  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id*.

### II.    EXHAUSTION UNDER THE PRISON LITIGATION REFORM ACT

"The Prison Litigation Reform Act ('PLRA') provides that '[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  *Engles v. Jones*, 2018 WL

2

6832085, at *9 (W.D.N.Y. Dec. 28, 2018) (alteration in original) (quoting 42 U.S.C. § 1997e).  This "exhaustion requirement applies to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Id.* (quoting *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002)).  Exhaustion is not required, however, "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736 (2001).

In New York, prisoners "ordinarily follow a three-step . . . grievance process" to satisfy the PLRA's exhaustion requirement. *Engles*, 2018 WL 6832085, at *9 (quoting *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010)).  First, the inmate must file "a grievance with the Inmate Grievance Resolution Committee.  Next, the inmate may appeal an adverse decision to the prison superintendent.  Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee." *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236).  In general, a prisoner must complete "all three levels of review" before "seek[ing] relief in federal court under [section] 1983." *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236).

That being said, there is an exception to the exhaustion requirement if "an administrative remedy is 'unavailable.'" *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)).  The Supreme Court has held that this exception applies: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart

3

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

"[F]ailure to exhaust is an affirmative defense," and the defendant therefore bears the burden of proof. *Engles*, 2018 WL 6832085, at *9 (quoting *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 580 (S.D.N.Y. 2015)). "[O]nce a defendant demonstrates that the plaintiff has not exhausted his administrative remedies," however, "'the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions' to the exhaustion requirement." *Id.* (quoting *Perry v. Rupert*, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013)). "Courts evaluating non[-]exhaustion defenses under the PLRA must do so on a claim-by-claim basis and may not dismiss the entire action because some, but not all, claims are unexhausted." *Saeli v. Chautauqua County*, 36 F.4th 445, 459 (2d Cir. 2022) (citing *Jones v. Bock*, 549 U.S. 199, 219-24 (2007)).

## **DISCUSSION**[2]

The defendants raise the affirmative defense of non-exhaustion as to three causes of action: Rodriguez's ADA claim (first cause of action), his Eighth Amendment

---

[2] The Court assumes the reader's familiarity with the factual background of this case and will refer only to those facts necessary to explain its decision.

claim (second cause of action), and his retaliation claim against Truax (fifth cause of action).[3]  The Court will address the first two of those claims before turning to the third.

## I.    FIRST AND SECOND CAUSES OF ACTION: ADA AND EIGHTH AMENDMENT VIOLATIONS

The first and second causes of action both deal with Rodriguez's medical conditions.  More specifically, Rodriguez alleges that the defendants violated the ADA by "fail[ing] to provide [him] with reasonable accommodations despite knowledge of [his] medical and physical condition" and that they violated the Eighth Amendment by "forcing [him] to work and attend vocation" despite his disabilities and medical issues. *See* Docket Item 9 at 24-27.

Among other things, Rodriguez says that "Truax placed him in a work assignment in the facility laundry room" despite his medical issues and that other defendants "failed to correct the issue."[4]  Docket Item 60-10 ¶ 3.  Rodriguez also says that upon being assigned to the laundry, he "immediately started to write medical, informing them of what happened in hopes of being removed from the laundry department and rightfully placed on medical idle."  Docket Item 61 ¶ 46.  But he "did not

---

[3] Rodriguez's original fifth cause of action was dismissed, so what the defendants refer to as his "fifth" cause of action is the sixth cause listed in his complaint. *See* Docket Item 60-11 at 17 (citing Docket Item 9 at 30).  And although this cause of action also raises claims against another defendant, Kenneth Sweet, the defendants argue only that Rodriguez failed to exhaust with respect to Truax's alleged retaliation.

[4] Rodriguez also says that in 2018, he was forced to participate in a vocational training program that "would cause a worsening of [his] disability."  Docket Item 61 ¶¶ 50-54; *see also* Docket Item 56-2 at 52.  There is no dispute, however, that Rodriguez exhausted his claims stemming from the vocational training program. *See* Docket Item 56-1 at 2 (challenging "claims alleged to have occurred from, in or about, April 2017 through, in or about, July 2017").

receive a response, and so [he] submitted a grievance." *Id.* ¶ 47.  Ultimately, he "was

forced to work in the laundry department for about a month," Docket Item 9 ¶ 20, until

he was "further injured" and "no longer required to work," Docket Item 61 ¶ 48.

Therefore, he "did not get a response to [his] grievance" because he "was no longer

required to work," and because he was no longer working, he "had no basis to follow

up." *Id.* ¶ 49.

In other words, Rodriguez claims that he told prison officials that it was unsafe for

him to work in the laundry because of his medical conditions, but those concerns were

ignored.[5]  Then—as he feared—the work caused him further injury, and he was

removed from the position as a result.

As explained above, exhaustion is not required "where the relevant

administrative procedure lacks authority to provide any relief or to take any action

whatsoever in response to a complaint." *See Booth*, 532 U.S. at 736.  Construing all

facts in Rodiguez's favor, as this Court must on the defendants' motion for summary

judgment, that was the case here.  As Rodrigeuz observes, "[y]ou cannot grieve a past

act.  You can only grieve when there is a solution that DOCCS can provide."  Docket

Item 61 ¶ 49.  And once Rodriguez was removed from his laundry job, there was no

further relief that DOCCS could provide.

---

[5] Rodriguez asserts that he filed a formal grievance, Docket Item 61 ¶ 47, but the defendants counter that his "conclusory statement[]" cannot defeat summary judgment, Docket Item 62 at 2-3.  The Court finds, however, that even if Rodriguez did not submit a formal grievance on the work assignment issue, his claim can move forward because once the most substantial harm occurred—his further injury—he was removed from the assignment so there was no longer anything to grieve.

For that reason, Rodriguez was not required to exhaust the grievance regarding his work in the laundry room, and the Court therefore denies the defendants' motion for summary judgment based on failure to exhaust as to the first and second causes of action.

## II.     FIFTH CAUSE OF ACTION: RETALIATION BY TRUAX

Rodrigeuz also alleges that "the defendants took adverse actions against [him] for exhausting administrative remedies[] and writing letters informing Administration and [DOCCS] in Albany of the wrong that was being done to [him]."  Docket Item 9 at 30. Among other things, he claims that Truax retaliated against him when she presided over his disciplinary hearing in July 2018.  *See id.* ¶¶ 75-76 (alleging that Truax "violat[ed] rules [for] conducting a hearing and found [Rodriguez] guilty that same day" and that "[i]t was clear" that Truax "was retaliating against" Rodriguez).

The defendants' argument on Rodriguez's failure to exhaust this claim is limited: they say only that "to the extent [he] is alleging a retaliation claim stemming from Truax's conduct during his tier [disciplinary] hearing, he failed to file any grievances regarding retaliation by a hearing officer during a tier [disciplinary] hearing conducted on July 6, 2018."  Docket Item 56-1 at 6-7.  But as Rodriguez observes, he appealed the result of that hearing, and Truax's decision ultimately was reversed through the administrative process (albeit after Rodriguez had already served his punishment).  *See* Docket Item 61 ¶ 57 (citing Docket Item 60-3).  So once that disciplinary decision was reversed, there was nothing left to grieve:  Rodriguez sought and received the administrative relief available to him, but he already had served his punishment.  And as to Truax's other alleged retaliatory conduct, Rodriguez did submit a grievance

7

complaining that Truax's forcing him to participate in a vocational program was "direct retaliation." *See* Docket Item 56-2 at 355.

The Court therefore denies the defendants' motion for partial summary judgment as to the fifth cause of action against Truax as well.

## CONCLUSION

For all those reasons, the defendants' motion for partial summary judgment, Docket Item 56, is DENIED. The case is referred back to Judge Foschio for further proceedings consistent with the referral order of November 19, 2021, Docket Item 26. *See* Docket Item 64 (Judge Foschio's directing the parties to submit a proposed scheduling order following this Court's decision on the defendants' motion).

SO ORDERED.

Dated:   March 31, 2026
         Buffalo, New York


                          */s/ Lawrence J. Vilardo*
                          LAWRENCE J. VILARDO
                          UNITED STATES DISTRICT JUDGE